Talib Ibn KARIM, Appellant,

v.

Delicia N. GUNN, Appellee.

No. 08–FM–367.

District of Columbia Court of Appeals.

Submitted June 8, 2010.

Decided July 1, 2010.

Talib Ibn Karim, pro se.

No brief was filed on behalf of appellee.

Before KRAMER, Associate Judge, and SCHWELB and FARRELL, Senior Judges.

SCHWELB, Senior Judge:

Talib Karim (the husband) appeals from a Civil Protection Order (CPO) entered on January 17, 2008. He contends that there was insufficient evidence to support the issuance of the CPO; that his wife, Delicia Nicole Gunn, was attempting to use the CPO as a strategy for gaining the upper hand in a separate child custody proceeding; and that the trial judge abused his discretion by denying, in mid-hearing, the husband's request for a continuance, sought for the purpose of retaining counsel. No brief has been filed on the wife's behalf. Although the record does suggest that the wife's prime concern, in applying for the CPO, may not have been primarily related to domestic violence,[1] there was sufficient evidence to support the issuance of the order. Because the husband's other contentions likewise do not persuade us that the trial judge committed prejudicial error, we affirm.

## I.

At the evidentiary hearing held on January 17, 2008, the husband, who is a member of our Bar, but who was not experienced in litigation, appeared *pro se*, while the wife was represented by counsel. The principal witnesses were the two parties. Although much of the wife's testimony followed the general lines of her petition, see note 1, *supra*, she also stated, *inter alia*, that on various occasions her husband "pushed me while I'm holding the baby," that he "grabbed my arm and tried to force me from not leaving the house," and that "he would pin me down and not let me move and I would constantly tell him to let go of me, to get off me, but he just wouldn't." The wife added that "[h]e didn't, you know slap me or anything but I could see it in his eyes it was a matter of time." The wife noted that the husband had slapped his young sister. She also testified that police officers had removed a rifle from the couple's home.[2]

The husband categorically denied the wife's allegations. He stated that his wife was angry because she erroneously suspected him of having an affair. He asserted that "she struck me on occasion, your Honor, and both with her hands closed and with her hands open." The husband insisted that "[d]espite that, I never re-

---

1. In the form "Petition and Affidavit for Civil Protection Order" executed by Ms. Gunn to initiate the proceeding, Ms. Gunn was asked the following:

 Please describe any such acts, including physical assaults like hitting, punching, shoving or kicking; threats to do harm, or destruction of property.

 Ms. Gunn's response mentioned no physical assault or destruction of property. Instead, she alleged as follows:

 On or about January 5th 2008 at approximately 5:00 a.m. At Location: 434 O Street, SW, Washington, DC 20004,

 Petitioner returned home after being out of town for over 1 month. Respondent was supposed to have moved out and he did not. Petitioner asked Respondent to leave and he refused saying he had nowhere to go. Respondent came into Petitioner's bedroom the following morning and was copying computer files and Petitioner asked him to

leave once again. Respondent got up in Petitioner's face demanding to hold the baby, yelled at Petitioner to not raise her voice, intimidating Petitioner. Respondent refused to leave and then became angry. The parties began to argue, Respondent told Petitioner not to raise her voice and acted that he would leave when he felt like it. Petitioner then called the police and Respondent got on the phone with the officer and told the police that Petitioner was unstable and should not be making the call. Respondent continued to refuse to leave; Petitioner left the home and got in her car. Petitioner called the police again and notified them that Respondent had a gun in the house and she was in fear of what he might do.

2. According to the husband, the rifle was one that his late father had used while serving his country in the Korean War.

turned any type of strike or blow to her when she struck me." [3]

Basing his decision on his assessment of the credibility and demeanor of the two principals, the judge found that "since the [five-month-old] child was born, and during the course of the marriage ... the respondent has pushed the petitioner, has aggressively held her down, and grabbed her against her will." The judge concluded that this conduct violated the intrafamily offense statute. We are in no position to second-guess the judge's demeanor-based credibility findings, *see* D.C.Code § 17–305(a) (2001); *In re S.G.*, 581 A.2d 771, 775 (D.C.1990), and although the level of any violence was not at all extreme, we discern no error of law. *See* D.C.Code §§ 16–1001 *et seq.* (2001); *Cruz–Foster v. Foster*, 597 A.2d 927, 930 (D.C.1991).[4]

## II.

 Karim's claim that his wife, through her attorney, was utilizing the CPO procedure primarily to strengthen her position with respect to issues relating to custody and child support, rather than to secure protection from domestic violence, is not altogether implausible. Aside from the focus of the wife's petition on issues other than domestic violence, see *supra* note 1, the cross-examination of the husband by the wife's counsel was addressed almost entirely to the husband's fitness to be the child's custodian and to his financial ability to make child support payments. However, given the trial judge's finding, based on adequate if not overwhelming support in the record, that intrafamily offenses occurred, as well as the judge's implicit rejection of any notion that the application for a CPO was a subterfuge initiated for improper ends, we are not prepared to reverse the judgment on the basis of any hypothesis regarding the wife's motives for applying for the CPO.[5] To be sure, we have recognized the "principle that one having a legal right shall not be permitted to avail himself of it for the purpose of injustice or oppression." *Entrepreneur, Ltd. v. Yasuna*, 498 A.2d 1151, 1160–61 (D.C.1985). The husband has not demonstrated that the wife acted with such a malign purpose, however, and "[t]he motive of a party in bringing an action generally is immaterial to the question whether the action may be maintained." 1 Am.Jur.2d *Actions*, § 43, at 828 (2005), and see authorities there cited.

## III.

 The husband claims that the trial judge abused his discretion, in mid-trial, by declining to grant the husband, a lawyer, an opportunity to retain counsel. The husband claimed that he had not anticipated the nature and seriousness of a CPO hearing, that he recognized that he was doing a poor job in representing himself, and that he was requesting a continuance so that he could retain an attorney. The

---

3. The husband did acknowledge that on a single occasion, when his wife grabbed the phone from him, he "moved the phone back and pushed her away from me, but not in a violent way at all, your Honor."

4. The judge acknowledged that he was "losing patience" with the husband, and he frequently and severely rebuked the husband for the number and wording of his questions and comments. Although the judge's language and tone were at times arguably less polite than they might have been, his exasperation with the lack of preparation for trial by the husband, a lawyer, was understandable, and reversal is not warranted on the basis of anything the judge said to the husband.

5. The issues of custody and child support were the subject of a separate proceeding before a different judge. A hearing before that judge was scheduled a few weeks after the CPO hearings in this case. The judge in the custody case ultimately awarded custody to the wife, citing *inter alia*, the husband's commission of an interfamily offense.

judge denied the motion, finding it hard to believe that a member of the Bar could have been so ill-informed, and made so little inquiry, about the nature of the proceedings.

 Where, as in this case, a continuance is requested after the trial has begun, it is [generally] untimely. *See also* D.C. Fam. Ct. R. G cmt. ("The Family Division, and the Superior Court in general, will operate with as few continuances after possible."); cf. Super. Ct. Dom. Viol. R. (4)(a). Moreover, "[t]he [Family Division] shall require a [written] statement of reasons in support of an application [for a continuance] made less than 5 days before the scheduled hearing date." Fam. Ct. R. G(c). While an exception to these time limitations might arguably be made in exceptional and compelling circumstances, the husband has made no such showing here.

Even aside from the untimeliness of the husband's request, his motion was properly denied on the merits. The grant or denial of a motion for a continuance is committed to the sound discretion of the trial court. *See, e.g., R.E.S.,* 978 A.2d 182, 188 (D.C.2009). Where, as in this case, the asserted grounds for the request for a continuance were based on an inexcusable misapprehension as to applicable procedural law on the part of a litigant who was himself an attorney, the denial of the request was appropriate and, indeed, inevitable.

On appeal, the husband argues that the court has "particularly shown leniency" to requests for continuances by *pro se* litigants and that the judge abused his discretion by not giving special consideration to him when he (the husband) was appearing *pro se.* On the contrary, as we stated in

*West v. Morris,* 711 A.2d 1269, 1272 n. 5 (D.C.1998),

> "[a]lthough a plaintiff has the right to proceed *pro se,* such a litigant can expect no special treatment from the court." (*Abell v. Wang,* 697 A.2d 796, 804 (D.C.1997)) (citations omitted).[6]

There is no sound reason why the husband could not have obtained the assistance of counsel before trial, and the judge was under no obligation to rearrange his calendar, or to compel the wife and her attorney to return to court at a later date, solely because the husband belatedly regretted his improvident decision to represent himself.

*Affirmed.*

---

**6.** There are exceptions to this principle, *see Padou v. District of Columbia,* 998 A.2d 286 (D.C.2010), but none of them is relevant here.