Noble v. Sec'y of State, No. 48-9-10 Excv (Manley, J., Oct. 21, 2010)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

STATE OF VERMONT

| | |
|---|---|
| SUPERIOR COURT | CIVIL DIVISION |
| ESSEX UNIT | DOCKET NO. 48-9-10 Excv |

| | | |
|---|---|---|
| JOHN A. NOBLE | vs. | SECRETARY OF STATE, VINCENT ILLUZZI, and LEONIDAS ZENONOS |
| Plaintiff | | Defendants |

## DECISION AND ORDER

This matter is before the court on the defendants' various motions to dismiss and for judgment on the pleadings. A hearing was held on October 1, 2010 at which time all parties were present. Plaintiff John Noble opposes dismissal and argues that final judgment should be entered in his favor. Plaintiff is representing himself. The Secretary of State is represented by Assistant Attorney General David Cassetty. Vincent Illuzzi is proceeding pro se, and Leonidas Zenonos is represented by Sten Lium, Esq.

## PROCEDURAL HISTORY

On September 2, 2010, Plaintiff John Noble filed a letter with the court "challeng[ing] the results of the 2010 primary election" which was held on August 24. Along with the letter, Plaintiff submitted the requisite filing fee, and the letter was docketed as a new case. The court construed Plaintiff's letter as a complaint for declaratory judgment challenging the eligibility of certain candidates for office in Essex County. The court then issued an entry order on September 10 requiring Plaintiff to resubmit his complaint in the form required by the rules of procedure and serve it in accordance with V.R.C.P. 3 & 4.

Plaintiff resubmitted his complaint on September 16. In it he named the Vermont Secretary of State, Vincent Illuzzi, and Leonidas Zenonos as defendants. Service was completed on all the defendants by September 30, and a hearing was held the next day. At the hearing, the parties stipulated to the material facts in the case, and the court ordered that all the filings in this case be complete by October 11.

On September 28, Mr. Zenonos filed his answer, a motion for judgment on the pleadings, and a motion to dismiss. He filed a supplemental memorandum on October 5.

On September 30, Mr. Illuzzi also filed a motion for judgment on the pleadings, and on October 1, the Secretary of State filed a motion to dismiss. The secretary filed a

supplemental memorandum on her motion on October 6. Plaintiff replied to all of the defendants' motions on October 8. This case is now ready for decision.

FACTS

Mr. Illuzzi is currently a state senator and the Essex County State's Attorney. He is running for re-election to both of these offices. Mr. Illuzzi is not a resident of Essex County.

Mr. Zenonos is a candidate for Sheriff of Essex County. He is not a resident of Essex County.

Plaintiff is a resident of Essex County and a registered voter. He voted in the Republican primary on August 24, 2010.

DISCUSSION

Plaintiff challenges Mr. Illuzzi's and Mr. Zenonos's elections in their respective primaries. This court has jurisdiction over such challenges. See 17 V.S.A. § 2617.

> (a) The result of an election for any office . . . may be contested by any legal voter entitled to vote on the office . . . .
>
> (b) A contest is initiated by filing a complaint with a superior court alleging:
>
> .   .   .
>
> > (3) that for any other reason, the result of the election is not valid.
>
> (c) The complaint shall be filed within 15 days after the election in question, or if there is a recount, within 10 days after the court issues its judgment on the recount. In the case of candidates for state or congressional office, for a presidential election, or for a statewide public question, the complaint shall be filed with the civil division of the superior court, Washington County. In the case of any other candidate or public question, the complaint shall be filed with the superior court in any county in which votes were cast for the office or question being challenged.
>
> (d) The Vermont Rules of Civil Procedure shall apply to contests of elections, except that such cases shall be placed upon a special calendar, and hearings shall be scheduled on a priority basis, as public policy demands that such questions be resolved promptly.

17 V.S.A. § 2603.

In this case, Plaintiff is a legal voter entitled to vote on the offices of Essex County Sheriff and Essex County State's Attorney. His complaint, which now complies with the Vermont Rules of Civil Procedure, contests the August 24 primary elections. In the complaint, Plaintiff claims the candidates, Mr. Illuzzi and Mr. Zenonos, are not eligible to hold the respective offices to which they seek election. The defendants' motions raise four essential arguments: (1) Plaintiff's complaint is untimely; (2) Plaintiff lacks standing; (3) Plaintiff raises a nonjusticiable political question; and (4) the defendants are entitled to judgment as a matter of law on the issue of constitutional construction. The court will address each argument in turn.

A.    Timeliness

The Secretary of State seeks to dismiss Plaintiff's complaint because she claims that it is untimely. Both Mr. Illuzzi and Mr. Zenonos make this identical argument, but they style their requests as motions for judgment on the pleading. Regardless of how their motions are titled,[1] the court finds that Plaintiff's complaint was timely filed, and the defendants' motions under this theory are DENIED.

The parties' first argument under this theory is that essentially the complaint should be dismissed under V.R.C.P. 12(b)(1) because the court lacks subject-matter jurisdiction. However, subject-matter jurisdiction is specifically conferred on this court by virtue of 17 V.S.A. § 2617. Section 2603(c) requires complaints to be filed within 15 days after the election in question. The defendants argue that the general election has not passed, and so Plaintiff's complaint is premature. They argue that, since the complaint was filed prematurely, the complaint is not ripe, and therefore the court lacks subject-matter jurisdiction. See *Merriam v. AIG Claims Servs., Inc.*, 2008 VT 8, ¶ 13, 183 Vt. 568 (mem.) (when claim is unripe, court lacks subject-matter jurisdiction and must dismiss the claim).

The defendants misread Plaintiff's complaint and the statute. Plaintiff contests Mr. Illuzzi's and Mr. Zenonos's elections in the *primary*. Plaintiff argues that they were not qualified to run in the primary for the respective offices they sought election to. Candidate nominations and primary elections are governed by chapter 49, Title 17 of the Vermont Statutes. That chapter does not provide for the contest of primary elections. In

---

[1]  Courts look at the substance of a motion rather than its title to determine how that motion is to be considered under the rules of civil procedure. *Brasfield & Gorrie, L.L.C. v. Soho Partners, L.L.C.*, 35 So. 3d 601, 604 (Ala. 2009); accord *City of Newport v. Lindsay*, 106 Vt. 201, 203 (1934) (a filing must be determined from its contents, not from the label upon it). To the extent that the defendants' motions for judgment on the pleadings claim that (1) the complaint is untimely; (2) Plaintiff has no standing; and (3) this case is nonjusticiable, those motions are DENIED.

the absence of a specific provision governing primary contests, "all other provisions of this title [17] shall govern the several procedures specified in this chapter [49] for the making of nominations." 17 V.S.A. § 2411. Thus, 17 V.S.A. § 2603 governs the contest of primary elections as well as general elections. This interpretation is consistent with the broad language used § 2603. "The result of *an* election for *any* office . . . may be contested by any legal voter entitled to vote on the office . . . ." *Id.* § 2603(a) (emphasis added). Therefore, Plaintiff's contest of the primary election was timely filed under the law.

The Secretary of State urges us to wait until after the general election to decide this case because the cost of reprinting and redistributing ballots would be enormous. However, it does not matter that "the constitutional interests asserted by Plaintiff can be addressed equally well after the [general] election has taken place." (Sec'y of State's Mot. to Dismiss 2, Oct. 1, 2010.) Plaintiff has chosen to contest the primary and not the general election, and § 2603 does not require him to wait until after November 2. A "party may file suit at *any time* during the limitations period or after the limitations period if it was properly tolled." *Ellis v. Estate of Ellis*, 2007 UT 77, ¶ 37, 169 P.3d 441 (emphasis added). Consequently, Plaintiff's complaint regarding the primary election is ripe, and the court has jurisdiction over it pursuant to Title 17, chapter 51.

Alternatively, the defendants argue that Plaintiff's complaint is late, and therefore it fails to state a claim upon which relief can be granted under V.R.C.P. 12(b)(6). The defendants argue that § 2603(c) is essentially a limitations period of 15 days on election contests.[2] A defendant can properly raise the limitations defense in a motion to dismiss under V.R.C.P. 12(b)(6). See *Fortier v. Byrnes*, 165 Vt. 189, 193 (1996). While the court agrees that § 2603(c) imposes a 15-day limitations period, the complaint should not be dismissed no this basis because Plaintiff filed his initial pleading within 15 days of the August 24 primary.

Plaintiff initially filed a letter with the court on September 2, nine days after the primary. The court construed this letter, which was submitted with a filing fee, as a non-conforming complaint. The court did not dismiss this initial filing but instead ordered Plaintiff to refile his complaint to conform with the rules of procedure. Plaintiff's subsequent pleading on September 16 is more properly characterized as an amendment under Rule 15. Amended pleadings relate back to the filing date of the original pleading under V.R.C.P. 15(c). Thus, under this rule, the initial filing on September 2 tolled the 15-day statute of limitations. It does not matter that the defendants were unaware of the date on which the original complaint was filed. Nor does it matter that they were not served until 15 days after the primary. The initial filing of the complaint is effective in

---

[2] Mr. Zenonos, perhaps more accurately, describes § 2603(c) as a statute of extinguishment. Regardless of how this 15-day period is characterized—as a limitations period or an extinguishment period—Plaintiff's September 2 filing and subsequent service was sufficient to toll the running of the statute. See generally *McLaughlin v. Blake*, 120 Vt. 174, 178-79 (1957) (discussing differences between statutes of limitations and statutes of extinguishment).

tolling the statute of limitations as of that filing date, so long as timely service is accomplished under the rules of civil procedure. See *Weisburgh v. McClure Newspapers, Inc.*, 136 Vt. 594, 595 (1979). V.R.C.P. 3 requires the summons and complaint to be served upon a defendant within 60 days after the filing of the complaint. In this case, all the defendants were served with a summons and complaint within 60 days of September 2, and therefore, Plaintiff's initial filing on that date effectively tolled the statute of limitations. Accordingly, Plaintiff's complaint was not untimely or premature, and the defendants' motions to dismiss for these reasons are DENIED.

    B.    Standing

Like a suit's ripeness, a plaintiff's standing affects a court's subject-matter jurisdiction. Without standing, the court has no subject-matter jurisdiction over a petition for declaratory relief. *Bischoff v. Bletz*, 2008 VT 16, ¶ 15, 183 Vt. 235. In order to have standing, a plaintiff "must have suffered a particular injury that is attributable to the defendant and that can be redressed by a court of law." *Id.* (quotation omitted).

As noted above, this court has subject-matter jurisdiction over the contested elections at issue here. Section 2603(e) of Title 17 of the Vermont Statutes gives the court the power to redress violations of the election law, including ordering a new election. The defendants, and the Secretary of State particularly, appear to argue that Plaintiff has not suffered a particular injury that is attributable to the defendants. Specifically, they argue that Plaintiff, as a Republican voter, does not have standing under § 2603 to challenge Democratic voters' election of their candidates in the primary.[3]

Section 2603(a) states that "[t]he result of an election for *any office* . . . may be contested by *any legal voter entitled to vote on the office* . . . ." 17 V.S.A. § 2603(a). The defendants appear to argue that Plaintiff, a Republican, is not entitled to vote in the Democratic primary. This argument is incorrect for two reasons. First, Plaintiff was "entitled" to vote in the Democratic primary, but he chose not to. In Vermont, a primary voter enters the voting booth with ballots from both of the major parties but then chooses which party's primary he wants to vote in. See 17 V.S.A. §§ 2362-2363. A voter's political registration or preference does not deprive him or her of the right to vote in

---

[3] Although not stipulated to at the October 1 hearing, it appears from the papers filed that Mr. Zenonos will appear on the November ballot as a Democrat running for sheriff, and Mr. Illuzzi is running unopposed for State's Attorney as a Republican and a Democrat. Mr. Illuzzi is also running unopposed for a Senate seat in the Essex-Orleans District as a Republican and a Democrat. This information is confirmed by the "Final 2010 General Election Candidate Listing," available at http://vermont-elections.org/elections1/2010FINALGECANDIDATES9272010.pdf (last visited Oct. 14, 2010). The court can take judicial notice of this list pursuant to V.R.E. 201(b) because it is not reasonably subject to dispute, and its accuracy cannot reasonably be questioned because it is published by a government agency responsible for maintaining this list. See 17 V.S.A. § 2359 (all town and county clerks who have received primary petitions shall notify the secretary of state of the names of all candidates); see also *State ex rel. J.R.B.*, 11 So. 3d 2, 3 (La. Ct. App. 2009) (applying state's version of Uniform Rules of Evidence 201, court will take judicial notice of the Secretary of State's Elected Official Database).

5

another party's primary, and the statute does not specifically require that a voter, who contests an election, vote in any election at all. The voter only needs to be "entitled" to vote; s/he does not need to actually vote to have standing.

Furthermore, Plaintiff has standing under the law as a "legal voter" who is "entitled to vote on the *office*[s]" of Essex County Sheriff and State's Attorney. The statute twice emphasizes that a voter has standing to contest an election for a particular office, and the statute does not limit a voter's right-to-contest only to the primary election he voted in. It is irrelevant under the statute that the election was a party primary Plaintiff did not vote in because the statute applies to any and all elections for a particular "office." Therefore, Plaintiff's vote in the Republican primary does not deprive him of standing to contest the election of any candidate for an office Plaintiff is entitled to vote on, even Democratic candidates. Under the statute, a voter need not vote at all to contest an election he is "entitled" to vote in. Thus, Plaintiff's failure to vote in the Democratic primary does not deprive him of standing to bring this action the Democratic defendants.

It may also be suggested that Plaintiff has not suffered any injury as a voter, and therefore has no standing, because the allegedly ineligible candidates, i.e., Mr. Zenonos and Mr. Illuzzi, have not been elected to office for this coming term and may not be elected. Indeed, Plaintiff may not suffer any injury in the case of the sheriff's race where Mr. Zenonos is running against an opponent from Lunenburg.[4]

The court is not convinced that Plaintiff is without standing to file the instant complaint for declaratory judgment. "Injury to the plaintiff . . . need not have occurred prior to the declaratory judgment action because one of the main goals of declaratory relief is to resolve conflicts between parties' legal rights before injury occurs." *Dodson v. City of Wentzville*, 133 S.W.3d 528, 535-36 (Mo. Ct. App. 2004). For standing purposes in a suit for declaratory judgment, an injury in fact need only be reasonably expected. See *Brod v. Agency of Natural Res.*, 2007 VT 87, ¶ 9, 182 Vt. 234. "Thus, declaratory relief is available when a party is suffering from the *threat* of actual injury . . . ." *Chase v. State*, 2008 VT 107, ¶ 13, 184 Vt. 430 (quotation omitted) (emphasis added).

In this case, it can be reasonably expected that Mr. Illuzzi will be re-elected both as a senator and as Essex County's State's Attorney because he faces no challenger for these offices, barring a successful write-in campaign. Therefore, Plaintiff suffers from a reasonable and realistic "threat" of having a potentially ineligible elected official next year. Thus, declaratory judgment is appropriate in this case because "it serves the useful purpose of clarifying the legal relations of the parties or terminating the insecurity and uncertainty of the controversy." *Coop. Fire Ins. Ass'n of Vt. v. Bizon*, 166 Vt. 326, 331 (1997).

---

[4] Lunenburg is in Essex County. 24 V.S.A. § 6. The residences of all candidates for elective office in Vermont can be found on the Secretary of State's website. See *supra* note 4.

In *Jenkins v. Bogard*, 980 S.W.2d 270, 272-73 (Ark. 1998), the Arkansas Supreme Court held that the proper means of enforcing a provision allowing only eligible candidates on election ballots is to petition for declaratory judgment. Waiting to file such a complaint until after the general election, as the Secretary of State proposes, may in fact render Plaintiff's complaint moot. See *Oliver v. Phillips*, 290 S.W.3d 11, 14-15 (Ark. 2008) (challenge to candidate's eligibility, asserted via action for declaratory judgment, was rendered moot by election); accord *Doria v. Univ. of Vt.*, 156 Vt. 114, 117 (1991) (candidate seeking declaration that voter poll improperly influenced election was not entitled to declaratory relief because, after election was over, there was no justiciable controversy).

For these reasons, the court finds that Plaintiff has standing to bring this suit, and the court therefore has subject-matter jurisdiction in this case. Therefore, the defendants' motions to dismiss on these grounds are DENIED. [5]

3. Justiciability

Closely related to standing is justiciability. The relationship between jurisdiction, standing, and justiciability were discussed at length by the Vermont Supreme Court in *Brigham v. State*:

> The doctrine of judicial self-restraint derives from Article III of the United States Constitution, which states that federal courts have jurisdiction only over actual cases or controversies. Vermont has adopted the case-or-controversy requirement. The case-or-controversy requirement of Article III incorporates the doctrines of standing, mootness, ripeness, and political question, all of which help define and limit the role of the courts to ensure proper balance among the three branches of government. In *Hinesburg Sand*, we noted that "[o]ne of the 'passive virtues' of the standing doctrine [and case-or-controversy requirement] is to promote judicial restraint by limiting the occasions for judicial intervention into the political process." [*Hinesburg Sand & Gravel Co. v. State*, 166 Vt. 337, 340-41 (1997).] Thus, for a court to maintain its proper role among the three branches of government, it must exercise judicial restraint by not asserting jurisdiction over claims that are moot or not yet ripe, or that pose a political question. . . . Prudential judicial restraint in and of itself, however, does not excuse the court from its duty to uphold the constitution.

2005 VT 105, ¶ 9, 179 Vt. 525 (citations omitted) (first two alterations in original).

---

[5] The court notes that even if Plaintiff does not have standing to bring this action the practical outcome of the case would remain the same, as further discussed below.

7

In the instant case, the court has determined that Plaintiff has standing, and his claim is ripe and not moot. The defendants, however, contend that this suit poses a political question which the court should not address in favor of judicial restraint. The defendants argue that the court should exercise judicial restraint so as not to interfere with the political process of elections.

Undoubtedly, Plaintiff is asking the court to affect the election which is an inherently political process. If the court were to grant Plaintiff's request, the court would essentially be undoing the political choices made by the voters of Essex County. However, contrary to the Secretary of State's argument, it is irrelevant that this is "an action by an operative for one political party to challenge the legitimacy of the candidates from an opposing party." (Sec'y of State's Mem. Supp. Dismissal 2, Oct. 6, 2010.) "[T]he motive of a party in bringing an action generally is immaterial to the question whether the action may be maintained." *Karim v. Gunn*, 999 A.2d 888, 890 (D.C. 2010) (quotation omitted).

Surely, "the Court must not permit political parties to use the judiciary to gain an advantage . . . in political contests," (Sec'y of State's Mem. Supp. Dismissal 2, Oct. 6, 2010) but this is not a case where one party "operative" is challenging the nonjusticiable *political* qualifications of an opposing party's candidate. Plaintiff is not alleging in his suit that the individual defendants are politically unsuited for office due to some offensive trait like dishonesty, corruption, bad character, etc. Such allegations are nonjusticiable. See *Good v. Roy*, 459 F. Supp. 403, 406 (D. Kan. 1978) ("It is the prerogative of the voters, not the courts, to weigh, balance, sift and sort the words and actions of political candidates."). Instead, Plaintiff is alleging that the individual defendants are legally ineligible to be elected because they do not meet certain defined constitutional requirements; this is a justiciable issue. See *In re Carabello*, 516 A.2d 784, 786 (Pa. Commw. Ct. 1984) (whether candidate for executive committee of the Democratic Party met residency qualifications as set forth in election code was a justiciable issue).

"[I]t is not for the courts to intrude themselves into the electoral process, except upon matters involving the enforcement of particular constitutional interests, or upon specific authorization expressed by statute." *In re Smith*, 131 Vt. 24, 25 (1972). This is precisely what the court is doing here. Although "intrud[ing]" on the electoral process, the court is specifically authorized to do so in this instance in order to enforce particular constitutional interests, expressly pursuant 17 V.S.A. § 2603. Thus, even if this suit results in one party gaining advantage over another, such a result is incidental to the proper enforcement of the law. Therefore, the court will not abdicate its duty to uphold the constitution in favor of prudential judicial restraint. See *Brigham*, 2005 VT 105, ¶ 9. The defendants' motions to dismiss on these grounds are DENIED.

4.      Constitutional Construction

Finally, the defendants seek judgment on the pleading pursuant to Rule 12(c). "To review a judgment on the pleadings, we consider all the factual allegations in the pleadings of the nonmoving party and all reasonable inferences that can be drawn from them to be true and allegations to the contrary by the moving party to be false." *In re Estate of Gorton*, 167 Vt. 357, 358 (1997). "[T]he issue before the court is whether the movant is entitled to judgment as a matter of law based on the pleadings." *Sorge v. State*, 171 Vt. 171, 174 (2000).

The factually material allegations in the pleadings are not disputed. Mr. Illuzzi and Mr. Zenonos are running for county office, but both reside out-of-county. And Mr. Illuzzi is both a state senator and a state's attorney.

Plaintiff raises two legal arguments that require an interpretation of the state constitution. First, he argues that the constitution imposes a residency requirement on sheriffs and state's attorneys. Since neither Mr. Illuzzi nor Mr. Zenonos reside in Essex County, Plaintiff contends they are constitutionally ineligible to hold either of the above-named offices, should they be elected.

Plaintiff also argues that Mr. Illuzzi is constitutionally prohibited from holding the office of state's attorney and senator. Plaintiff argues that, by holding both offices simultaneously, Mr. Illuzzi is violating the separation of powers. The defendants argue in their Rule 12(c) motions that, given these undisputed facts alleged in the pleadings, the defendants are entitled to judgment as a matter of law because Plaintiff's interpretation of the constitution is legally incorrect. The court will address each issue in turn.

(a) *Residency*

Plaintiff first argues that, because Mr. Illuzzi and Mr. Zenonos reside outside Essex County, they are not eligible to hold the respective offices to which they seek election.[6] A diligent search shows that this issue has not been addressed by the Vermont Supreme Court. Therefore, an examination of the plain language of the constitution is necessary.

"Whether looking at a constitutional or a statutory provision, our interpretation begins with the plain language of that provision. If the plain language is clear and unambiguous,

---

[6] Plaintiff does not challenge Mr. Illuzzi's residency qualification to run for the Senate. As an Orleans County resident, Mr. Illuzzi is undoubtedly qualified to run for the Essex-Orleans District Senate seat under sections 15 and 18 of chapter II of the constitution. Even if Mr. Illuzzi's eligibility to hold that was seat was being challenged, the court has no jurisdiction to hear that challenge under the constitution. See Vt. Const. ch. II, § 19 (Senate has power to decide on election and qualifications of it members); 17 V.S.A. § 2603(a) (voter cannot contest the results of election to the general assembly); *Kennedy v. Chittenden*, 142 Vt. 397, 399-400 (1983) (court has no jurisdiction to hear complaint contesting election to the general assembly because adjudication by court would violate doctrine of separation of powers).

we will enforce it according to its terms." *State v. Pellerin*, 2010 VT 26, ¶ 7 (citation and quotations omitted). The spirit of the constitution is to be respected no less than its letter, yet the spirit is to be collected chiefly from its words. *Baker v. State*, 170 Vt. 194, 207 (1999).

Section 50 of chapter II of the Vermont Constitution governs the elections of sheriffs and state's attorneys.

> Sheriffs shall be elected by the voters of their respective districts as established by law. Their term of office shall be four years and shall commence on the first day of February next after their election.

> State's Attorneys shall be elected by the voters of their respective districts as established by law. Their term of office shall be four years and shall commence on the first day of February next after their election.

Vt. Const. ch. II, § 50. The plain language of this provision does not clearly and unambiguously require sheriffs and state's attorneys to be residents of the counties they are elected to serve in.

When the framers of the Vermont Constitution intended to impose a residency requirement on officers, the framers expressed their intent explicitly. For example, § 15 of chapter II requires that state representatives and senators be residents of their respective districts. "No person shall be elected a Representative or a Senator until the person has *resided* in this State two years, the last year of which shall be in the legislative district for which the person is elected." *Id*. § 15 (emphasis added). Likewise, the governor and the lieutenant governor must both be Vermont residents. "No person shall be eligible to the office of Governor or Lieutenant-Governor until the person shall have *resided* in this State four years next preceding the day of election." *Id*. § 23 (emphasis added). Furthermore, the framers intended voters to be residents.

> Every person of the full age of eighteen years who is a citizen of the United States, having *resided* in this State for the period established by the General Assembly and who is of a quiet and peaceable behavior . . . shall be entitled to all the privileges of a voter of this state.

*Id*. § 42 (emphasis added).

Thus, the framers knew exactly how to impose a residency requirement in the constitution. Conspicuously absent from § 50 is any mention of the word "reside" in any of its forms. Furthermore, no explicit residency requirements are mentioned for the offices of assistant judge, see *id*. § 50, probate judge, see *id*. § 51, or justice of the peace, see *id*. § 52. "For purposes of constitutional interpretation, the express mention of one

10

thing implies the exclusion of another which might logically have been considered at the same time." *State ex rel. O'Connell v. Slavin*, 452 P.2d 943, 946 (Wash. 1969) (en banc); see also *Pine Grove Twp. v. Talcott*, 86 U.S. 666, 674-75 (1873) (same). "It is a universally recognized rule of the construction that, where a constitution or statute specifies certain things, the designation of such things excludes all others, a maxim commonly known as *expressio unius est exclusio alterius*." *KGF Dev., LLC v. City of Ketchum*, 236 P.3d 1284, 1288 (Idaho 2010) (quotations and citations omitted); accord *Grenafege v. Dep't of Employment Sec.*, 134 Vt. 288, 290 (1976) (applying maxim). Therefore, since the Vermont Constitution explicitly mentions a residency requirement for some positions, but excludes mention of residency for sheriff and state's attorney, the constitution does not require sheriffs or state's attorneys to be residents of the counties they serve.

This conclusion is buttressed by chapter II, section 66 of the Vermont Constitution:

> Every person of good character, who comes to settle in this State, having first taken an oath or affirmation of allegiance to the same, may purchase, or by other just means acquire, hold and transfer land or other real estate; and after one year's residence shall be deemed a free denizen thereof, and entitled to all rights of a natural born subject of this State, except those privileges, the right to which is herein elsewhere determined, and *except also that such person shall not be capable of being elected Treasurer, or Representative in Assembly, until after two years' residence, nor be eligible to the office of Governor or Lieutenant-Governor until the person shall have resided in this State as required by section 23 of this Constitution.*

Vt. Const. ch. II, § 66 (emphasis added). In this one section, certain residency restrictions are explicitly required for one set of officials, leading to the inevitable conclusion that all other officials need only be Vermont residents for one year.

Furthermore, the Vermont Statutes do not impose a residency requirement on sheriffs or state's attorneys. See generally 24 V.S.A. §§ 131-446 (regulating powers and duties of county officers); 17 V.S.A. §§ 1-2883 (regulating elections). This fact stands in contrast to other statutes which specifically codify the residency requirements of the constitution. See, e.g., 17 V.S.A. § 1892 (house members must be residents). Accordingly, Vermont law, statutory or constitutional, does not require sheriffs or state's attorneys to be residents of the counties they serve.

Plaintiff counters that the framers' intent can be derived from § 50 itself: "Sheriffs shall be elected by the voters of *their* respective districts as established by law. . . . State's Attorneys shall be elected by the voters of *their* respective districts as established by law." Vt. Const. ch. II, § 50 (emphasis added). Plaintiff contends that the "their" in these sentences refers to the respective officers (sheriffs or state's attorneys); thus, according to

11

Plaintiff, the clauses should be read as stating, sheriffs shall be elected by the voters of the *sheriffs'* respective districts. Accepting this interpretation is contrary to the rules of grammar.

In construing the constitution, the court reads words and phrases in context according to the rules of grammar and common usage. *Smith v. Leis*, 2005-Ohio-5125, ¶ 62, 835 N.E.2d 5. The use of the pronoun "their" in the first sentence of § 50, while somewhat ambiguous, refers to the last-mentioned noun, in this case "voters."[7] In the first sentence of § 50, both "sheriffs" (or "state's attorneys") and "voters" are nouns and possible antecedents for the pronoun "their." "Their" does not refer to both "voters" and "sheriffs" because the two nouns are not joined, e.g., by the word "and." Thus, "their" refers to only one of these antecedents in the sentence. In order to form a proper sentence, a writer must "[m]ake the grammatical antecedent of a pronoun the noun that (1) *precedes the pronoun most closely*, and (2) agrees in number, gender, and person with that pronoun." Bryan A. Garner, The Redbook: A Manual on Legal Style § 10.10, at 148 (2d ed. 2006). In this case, the nouns "sheriffs" (or "state's attorneys") and "voters" agree in number, gender, and person with the pronoun "their." So the antecedent of the pronoun "their" must be the noun that "precedes the pronoun *most closely*." "Voters," and not "sheriffs," is the noun that precedes the pronoun most closely, and so "their" refers to "voters." Thus, § 50 should be properly read as, sheriffs shall be elected by the voters of the *voters'* respective districts. Such a construction does not impose a residency requirement on candidates, only on voters. Such a construction makes sense because the framers clearly did not intend for voters to vote in any district but their own.

Such grammatical interpretation also finds support in case law. See *Seiler v. State*, 67 N.E. 448, 448 (Ind. 1903) in which the Supreme Court of Indiana held that where there are two words in a clause each capable of being an antecedent, the relative pronoun refers to the latter noun, unless punctuation shows the writer intended the pronoun to refer to such antecedents jointly. Neither the punctuation nor the context of § 50 suggest that "their" refers to both "voters" and "sheriffs," and so the court will apply the general grammatical rule that a pronoun refers to the last antecedent that agrees in number, gender, and person with the pronoun.

Plaintiff further argues that chapter I, article 8 of the constitution requires residency for county officials. "That all elections ought to be free and without corruption, and that all voters, having a sufficient, evident, *common interest with, and attachment to the*

---

[7] Undoubtedly, the word "their" in the second sentence of this section ("Their term of office shall be four years and shall commence on the first day of February next after their election.") refers to "sheriffs" (or "state's attorneys") because the voters do not have a term of office. However, it is not clear from the construction of this section as a whole that the antecedent of "their" in the first part of the section is the same antecedent of "their" in the second part of the section. Even if we were to give this sentence the construction Plaintiff advocates, i.e., "their" refers to "sheriffs" (or "state's attorneys"), it would not impose a residency requirement on the person holding the office of sheriff. The sentence can be interpreted as meaning every district has a sheriff's office, and a sheriff shall be elected by the voters of the district containing the sheriff's office.

*community*, have a right to elect officers, and be elected into office, agreeably to the regulations made in this constitution." Vt. Const. ch. I, art. 8 (emphasis added). When all the clauses immaterial to this action are dropped, article 8 simply reads: all voters, having a *common interest with, and attachment to the community*, have a right to be elected into office, agreeably to the regulations made in this constitution. Plaintiff contends that Mr. Illuzzi and Mr. Zenonos have no right to be elected into office because they do not have a sufficient, evident, common interest with, and attachment to Essex County.

Plaintiff misreads article 8. This provision requires voters and officers to have a sufficient attachment to the "community;" however, community is not synonymous with county. As we noted above, if the framers had intended to place a residency requirement on officers, they would have done so expressly. The framers knew what the words "county" and "district" meant and used those words advisedly when they intended certain provisions to apply to counties, towns, or districts. Community, on the other hand, has a much less precise meaning. It is not defined in the constitution. "We assign to words not otherwise defined in the constitution their plain, ordinary and natural meaning as found in the dictionary." *Missouri Gaming Comm'n v. Missouri Veterans' Comm'n*, 951 S.W.2d 611, 612 (Mo. 1997) (en banc); accord *State v. Bisson*, 161 Vt. 8, 11 (1993).

Community can mean: "1. A neighborhood, vicinity, or locality; [or] 2. A society or group of people with similar rights or interests." Black's Law Dictionary 297 (8th ed. 2004). Community can be as narrow as "a group of people who reside in a specific locality, share government, and often have a common cultural and historical heritage," or it can be as broad as "a group of associated nations sharing common interests or a common heritage," e.g., the European community. Random House Webster's College Dictionary 275 (1991). "In ordinary and common usage, the word 'locality' is synonymous in meaning with the words 'place, vicinity, neighborhood and community.' But . . . the words 'locality' and 'neighborhood' are elastic and, dependent upon circumstances, may be equally satisfied by areas measured by rods or by miles." *Conley v. Valley Motor Transit Co.*, 139 F.2d 692, 693 (6th Cir. 1943) (citations and quotations omitted).

In this case, the court declines Plaintiff's invitation to equate the word "community" in article 8 with "county." Article 8's community-attachment requirement must be "agreeabl[e] to the regulations made in this constitution." Vt. Const. ch. I, art. 8. As we have already found, neither the constitution, nor the laws made pursuant to it, regulate county residency for county officers, and thus, reading such a requirement into article 8 would not be agreeable to the regulations made elsewhere in the constitution.

Plaintiff also contends that the framers did not intend for out-of-county residents[8] to be elected as county officers because one person could then hold the same office in several counties.[9] While perhaps accurate that the lack of a specific prohibition on this practice could lead to undesirable results—e.g. the sheriff of a big county divvying up his or her time to serve as sheriff in another county—an imputed residency requirement is not the only way to ward off this perceived danger. First, the voters could just vote against any out-of-county candidate or any person running for more than one office. See 17 V.S.A. § 2371(b) (candidate's name, residence, and party affiliation shall be printed on ballot). Furthermore, the legislature could simply pass a law preventing this practice. See, e.g., 24 V.S.A. § 362 (full-time state's attorneys shall not practice law privately). Arguably, there is an equally compelling policy reason for allowing voters to elect officials who do not reside in the voters' county: it increases the pool of eligible candidates to fill those positions. Such a consideration may be important for small counties like Essex which may have few lawyers or law enforcement officers willing to run for state's attorney or sheriff. Without a residency requirement, voters may be better assured that they are electing the most competent and qualified person willing to hold the office. If the framers had intended county officials to be county residents, they would have specifically mandated that in the constitution.

In summary, neither Mr. Illuzzi nor Mr. Zenonos are excluded from running for or holding a county office in Essex County by reason of their out-of-county residencies. The defendants are entitled to judgment as a matter of law on this issue.

(b)     *Separation of Powers*

Plaintiff's final argument is that Mr. Illuzzi is barred from running as both a senatorial candidate and a candidate for state's attorney because if he wins both elections,[10] then he will violate the separation of powers. "The Legislative, Executive, and Judiciary departments, shall be separate and distinct, so that neither exercise the powers properly belonging to the others." Vt. Const. ch. II, § 5. According to Plaintiff, if Mr. Illuzzi

---

[8]  Plaintiff also expressed concern that the lack of a residency requirement could lead to out-of-state residents running for county offices. However, this concern appears to be addressed in chapter II, § 66 of the constitution which states that every person who comes to settle in Vermont shall be deemed a free denizen after one year's residence, entitled to all rights of a natural born subject of this State, including, presumably, the right to run for county office. Furthermore, chapter I, article 8 states that only "voters" have a right to be elected to office, and a voter must be a Vermont resident. See Vt. Const. ch. II, § 42 (voter eligibility: residence); 17 V.S.A. § 2121(2) (same). Regardless, since both Mr. Illuzzi and Mr. Zenonos are Vermont residents, we need not address this argument.

[9]  Plaintiff also raises another concern. If assistant judges, who are elected under the same constitutional provision as sheriffs and state's attorneys, Vt. Const. ch. II, § 50, can reside out-of-county, then assistant judges could propose a budget and set a tax rate for the county they serve without feeling the consequences as a resident. See 24 V.S.A. § 133 (power of assistant judges to propose budgets and collect taxes). However, the court need not address this vexing question because neither Mr. Illuzzi nor Mr. Zenonos are running to be an assistant judge.

[10]  Mr. Illuzzi currently holds both offices and is seeking re-election to both.

14

holds both a senate seat in the legislative department and a position as state's attorney in the executive department, then he will be in a position to improperly exercise the powers of one department over another separate and distinct department.

Contrary to Plaintiff's position, "[t]his constitutional provision does not require an absolute separation of powers among the various departments or branches of government . . . ." *Chioffi v. Winooski Zoning Bd.*, 151 Vt. 9, 11 (1989). "The focus of a separation of powers inquiry is not whether one branch of government is exercising certain powers that may in some way pertain to another branch, but whether the power exercised so encroaches upon another branch's power as to usurp from that branch its constitutionally defined function." *In re D.L.*, 164 Vt. 223, 229 (1995). "Accordingly, we apply a relatively forgiving standard to separation-of-power claims, tolerant of such overlapping institutional arrangements short of one branch virtually 'usurp[ing]' from another its constitutionally defined function." *State v. Nelson*, 170 Vt. 125, 128 (1999) (alteration in original) (quoting *id.*).

Section 5 prohibits governmental "departments" or "branches," as a whole, from exercising power properly vested in the other "departments" or "branches." In this case, there is no allegation that the legislative department, as an institution, is improperly exercising the powers of the executive department by prosecuting criminal cases. Nor is there any suggestion that the executive department, as an institution, or the state's attorney's office specifically is improperly making law. Any overlap in power in this case is tolerated because we do not perceive one "branch" of government virtually usurping from another "branch" its constitutionally defined function.

Section 5 only regulates the institutions of power generally and does not prohibit an officer of one department from holding an office in another department. Over 45 years ago, the Attorney General issued an advisory opinion stating this precise proposition. The holding of an executive office by a member of the legislature is not in contravention of § 5 unless specifically prohibited by § 54 of this chapter, enumerating those offices which cannot be held jointly by one person. 1964-66 Op. Atty. Gen. 103. This construction of § 5 is consistent with the general rule of constitutional construction: "It is an established axiom of the constitutional law that where there are both general and specific constitutional provisions relating to the same subject, the specific provision will control." *de'Sha v. Reed*, 572 P.2d 821, 823 (Colo.1977); *Clouse ex rel. Clouse v. State*, 16 P.3d 757, 760 (Ariz. 2001) (same); *Harrison v. State*, 800 So. 2d 1134, 1137 (Miss. 2001) (same); *Jubelirer v. Rendell*, 953 A.2d 514, 528 (Pa. 2008) (same); accord *Town of Brattleboro v. Garfield*, 2006 VT 56, ¶ 10, 180 Vt. 90 (describing "long-standing rule of statutory construction that where two statutes deal with the same subject matter, and one is general and the other specific, the more specific statute controls").

Section 54 of chapter II of the constitution specifically governs incompatible offices.

No person in this State shall be capable of holding or exercising more than one of the following offices at the same time: Governor, Lieutenant-Governor, Justice of the Supreme Court, Treasurer of the State, member of the Senate, member of the House of Representatives, Surveyor-General, or Sheriff. Nor shall any person holding any office of profit or trust under the authority of Congress, other than a member of the commissioned or enlisted personnel in the reserve components of the armed forces of the United States while not on extended active duty, be eligible to any appointment in the Legislature, or to any executive or judiciary office under this State.

Vt. Const. ch. II, § 54. As a senator, Mr. Illuzzi is prohibited from being Governor, Lieutenant-Governor, Justice of the Supreme Court, Treasurer of the State, a member of the House of Representatives, Surveyor-General, or Sheriff. Nor can he hold an office under the authority of Congress or be a full-time active-duty member of the armed forces. Conspicuously absent from this list is the office of state's attorney. "Th[is] constitutional provision represents a denial of a right to a citizen. If it cannot be clearly demonstrated that he falls within its proscription, or equally plainly shown that he is in violation of its purpose, he is entitled to be held free of its prohibition." *Baker v. Hazen*, 133 Vt. 433, 437 (1975). Mr. Illuzzi, as both a state's attorney and senator, does not clearly fall within § 54's proscription. As such, he is constitutionally entitled to hold both offices free of its prohibition.

Without any citation to authority, Plaintiff counters that this interpretation of § 54 is contrary to the intention of the framers because it could result in the concentration of power into one person. Plaintiff posits that under this view of § 54, the governor could also be the secretary of state, a state's attorney, and an assistant judge all at the same time without violating the constitution. We have addressed a similar argument above. It is up to the voters to decide whether they want one person holding multiple constitutionally compatible offices. The legislature could also prohibit the hypothetical scenario Plaintiff fears. "In resolving disputes of constitutional construction, . . . . the intent of the framers of the Constitution is controlling and that intent must first be determined from the plain language of the words used." *Bryan v. Yellowstone County Elementary Sch. Dist. No. 2*, 2002 MT 264, ¶ 23, 60 P.3d 381. "The court has no right, by construction, to substitute its idea of the intent of the law when that intent is unmistakably expressed in legislative words." *Shay v. Roth*, 221 P. 967, 971 (Cal. Dist. Ct. App. 1923). Nor can the court "use policy arguments to give a constitutional provision a meaning that is not consistent with its wording." *Idaho Press Club, Inc. v. State Legislature of the State*, 132 P.3d 397, 402 (Idaho 2006). The wording of § 54 clearly does not prohibit one person from being both a senator and a state's attorney. The court cannot read such a prohibition into § 54 when its words do not support such an interpretation, regardless of the relative merit of having such a policy.

In summary, the constitution does not forbid Mr. Illuzzi from being a state's attorney and a senator at the same time. The defendants are entitled to judgment as a matter of law on this issue.

## ORDER

For the reasons above, the defendants' various motions to dismiss are all DENIED. The defendants' motions for judgment on the pleadings are GRANTED on the issue of constitutional interpretation.

DATED October 21, 2010 at St. Johnsbury, Vermont.


_____
M. Kathleen Manley
Superior Court Judge