CALEDONIA,
*March,*
1842.
—————
McGregor
*v.*
Balch *et al.*

DANIEL McGREGOR *v.* CALVIN BALCH and CALVIN
BALCH, Jr.

A person holding the office of postmaster is eligible to an executive or
judicial office in the state, but cannot hold them both at the same time.

If a justice of the peace exercises the office at the same time he holds the
office of postmaster, he will be removed on a *quo warranto,* and it seems
that, in a suit against him for acting as justice, he could not justify under
his appointment as justice.

But such person is a justice *de facto,* and all his acts as such, before remov-
al, are valid between third persons.

In a suit to which he is not a party, his appointment or eligibility cannot be
tried or determined, and, therefore,

It is no ground of a plea in abatement as to the jurisdiction, that the magis-
trate, at the time of issuing the writ and trying the case, was a post-
master.

THIS was an action of *assumpsit,* commenced before
Calvin Morrill, a justice of. the peace.   At the return of the
writ the defendants pleaded to the jurisdiction of the justice,
that, at the time of signing the writ and at the time of trial,
he was a postmaster under the authority of congress,¡and,
as such, was ineligible to the office of a justice of the peace,
and unauthorized to take cognizance of said action.   This
plea was overruled by the justice and a judgment rendered
for the plaintiff.   The defendants appealed to the county
court, and there insisted upon the same plea, and that court,
upon demurrer, adjudged the plea sufficient, to which the
plaintiff excepted.

*D. Hibbard, Jr.,* for plaintiff.

The plaintiff objects to the sufficiency of the defendant's
plea on two grounds ;

1. The justice, having been appointed and commissioned
to hold the office of justice of the peace, is an officer *de
facto,* since he came to his office by color of title ; and it
is a well settled principle of law that the acts of such persons
are valid, when they concern the public or the rights of
third persons.   *Adams* v. *Jackson,* 2 Aik. 145.

In *Berryman* v. *Wise,* 4 T. R. 366, Buller, Justice, says,
'in the case of all peace officers, justices of the peace, con-
' stables, &c., it is sufficient to prove that they acted in those

'characters, without proving their appointment.' 2 Starkie's Ev. 372–3. *Cross* v. *Kaye*, 6 T. R. 663. *People* v. *Collins*, 7 Johns. R. 549. *King* v. *Verelst*, 3 Camp. 433. *Rex* v. *Bigg*, 3 Pr. Wms. 427.

The 26th section of the constitution of this state is at most but directory. It does not make such appointments void. It is true that the legislature is *directed* not to make such appointments. But ever since the organization of the state such appointments have been made.

Now it cannot be endured for a moment that the acts of all these officers are to be adjudged *void*. If so who can calculate the amount of mischief that will follow? These justices have rendered judgments, have taken the acknowledgement of deeds, have sworn town officers and solemnized marriages. Shall all these proceedings under these appointments be adjudged *void?* If so in the case under consideration then *so* of all the others.

We further contend that when the justice accepted the office of justice of the peace, he thereby vacated his office of postmaster. This doctrine is supported in *Milward* v. *Thatcher*, 2 T. R. 81, where the defendant was a *jurat* of Hastings and he was elected to the office of *town clerk*, and it appeared that the two offices were *incompatible;* it was held that the acceptance of the latter (though an inferior office) vacated the former.

This case is similar to that of a justice who should join in marriage persons without publication, or without consent of parents or guardians. The practical construction, in such cases, has even been to consider the marriage valid.

2. The plaintiff contends that the fact whether the justice held the office of postmaster or not, cannot be tried in this indirect manner. It should be tried by information in the nature of a *quo warranto*. Swift's Dig. 567. 2 T. R. 777. *Rex* v. *Godwin*, Doug. 383.

In those cases where the legislature has declared certain things void, the courts are governed by a different rule from that which prevails in those cases where the acts of the legislature are only *directory*. *Rex* v. *Carter*, Cowp. 220. *Harrison* v. *Evans*, do. 535. *Rex* v. *Monday*, do. 535. *Foot* v. *Mayor of Truro*, 1 Str. 625.

In none of the foregoing cases did the court inquire into

CALEDONIA,
March,
1842.

McGregor
v.
Balch et al.

the legality of the appointment of the officers in the mode attempted in this case. In all these cases proceedings have been instituted to try the right of the persons to hold the office, and if found to be ineligible, or that they held offices incompatible with each other, the court would vacate the office. And in none of the above cases could the party take advantage of the appointment in a collateral action, but the question was tried in a prosecution instituted for that purpose. *People* v. *Collins*, 7 Johns. R. 549. *Potter* v. *Luther*, 3 Johns. 431. *Fowler* v. *Bebee*, 9 Mass. R. 222. *Bucknam* v. *Ruggles*, 15 Mass. R. 180. *Commonwealth* v. *Fowler*, 10 Mass. R. 291. *McInstry* v. *Turner*, 9 Johns. R. 135.

In October, 1801, Jonathan Robinson was a member of the house of representatives, and was elected a judge of the supreme court. In 1801, Stephen Jacob, a member of the council, was elected judge of the supreme court. In October, 1803, Theophilus Herrington was a member of the house of representatives, and was elected a judge of the supreme court. In 1825, Samuel Prentiss and Titus Hutchinson were both members of the house of representatives and were elected judges of the supreme court. By their accepting the offices of judges they vacated their seats as members of the house of representatives.

Officers, *de facto*, good. *Dow* v. *Hinesburgh* 2 Aikens, 24. *Hutchinson* v. *Pratt, et al.* 11 Vt. R. 420–1. *Tucker* v. *Aikin et al.* 7 N. H. R. 131–4. *Moore* v. *Graves*, 3 N. H. R. 413. *Jones* v. *Gibson*, 1 N. H. R. 266. *Morse* v. *Colby*, 5 N. H. R. 222.

*G. C. Cahoon*, for defendants.

Two questions present themselves for consideration;

1. Is the office of postmaster an office of *profit* or *trust* under the authority of congress ?

2. Is the office of a justice an executive or a judiciary office ?

As to the first question. The constitution of the United States clothes congress with the exclusive authority to act in the premises, and in conformity therewith is enacted the act to reduce into one the several acts relative to the postoffice department, and the acts in addition thereto. Postoffice Laws, 2, 24, 25, 26, 28, 29. The ordinary mode of appoint-

ing postmasters is pointed out in the first section of the general law. Postoffice Laws, 3. Here the law confers on the postmaster general the power of establishing and appointing postmasters at all such places as shall appear to him expedient on the post roads that are or may be established by law.

It is contended by the plaintiff that the appointment thus made does not come in purview of the prohibitory clause of the constitution of Vermont, §26, congress not making the appointment directly, neither as it regards the small offices, they being made as above stated, nor as it regards the large ones, they being made on the nomination of the President with the advice and consent of the senate. This construction presupposes that various officers of the United States government receive their appointment by the joint action of the two houses of congress, and that that constituted the authority of congress meant by the constitution. Such is not the fact. No officer is or ever has been so appointed by congress, except when the people have failed to elect a president or vice president. But, to give such a construction, the expression of the 26th section of the constitution is overlooked and the obvious intention of its framers disregarded, in fact, nullified.

The expression is, ' nor shall any person holding any office ' of *profit* or *trust under the authority of congress.*' Here reference is unquestionably had to the authority creating and sustaining the office ; and two powers are put in contradistinction—the state, and the congress of the United States. If the office of postmaster is conferred by the authority of this state, then it is not incompatible with the office of justice, both emanating from the same source; but if it is not so conferred, it necessarily follows, the two powers being in contrast, that it must be under the authority of congress, with which the various clauses of the United States constitution and the post office laws, before cited, fully concur.

But although this may be an office under the authority of congress, other questions arise. Is it either an office of *profit* or *trust* ? for if neither, the offices may not for other reasons be incompatible ; but if *either*, being established under the authority of congress, the incumbent shall not hold an executive or judiciary office under this state.

In the second section of said act, page 4, it is provided

McGregor
v.
Balch *et al.*

that all persons employed in the care, custody or conveyance of the mail, shall previous to entering upon the *duties assigned* to them, or the execution of the *trust*, and before they shall be entitled to any *emolument* therefor, take and subscribe the oath prescribed. And the third section provides for the giving of *bonds*; and the fourteenth section points out the *profits*, varying from fifty to eight *per cent.*, on the amount of letter postages received, &c.

As to the second question. Is a justice's office, when it has for its object the trying of causes, a *judiciary* office? The answer to this proposition seems too self evident to admit of serious argument to the contrary, more especially before the *judices*, the head of the judiciary. But as to the character of a justice's office we are not left to speculative theory to guide us as in an unexplored field, but have the judgment of the supreme court of the United States declaring it to be a judiciary office. *Wise* v. *Wilkins*, 3 Cranch. 335.

The justice, before whom the writ was made returnable, could neither *de facto* nor *de jure* hold and exercise the office of justice, the constitution, which is the paramount law of the land, not permitting such an union.

Our next inquiry is, can the defendant avail himself of the provisons of the constitution, or is that instrument, although by name the charter of our rights, to be a dead letter? If the constitution is to be a closed book to the court, as to one article, it must as to all, and if open as to one it is so as to all. But is there a question how they shall be made acquainted with it. In other words, is the court to set at nought the constitution unless the lawyer, by some particular mode, call their attention to it? In the oaths of office and allegiance the affiants swear that they 'will not *directly* or *indirectly* 'do any act or thing injurious to the constitution or govern-'ment thereof as established by convention,' and that they 'will faithfully execute their office according to law.' If the constitution is to be disregarded under the solemnities of such an oath, it is but a rope of sand.

In the case of *Marbury* v. *Madison*, 1 Cranch, there is a full exposition of the binding powers of the constitution on courts as received by the supreme court of the United States. In claiming it to be the duty of the court to arrest the proceeding in the only way the party could reach it, in

the present suit, is not admitting but that the party may have other remedies if he fails here. But, to that, it is a sufficient answer that the other remedies would be attended with unnecessary expense. If the state's attorney, on proper affidavits, should move this court for leave to file an information, in the nature of a *quo warranto*, against Calvin Morrill, on account of his usurping and wrongfully using the office of justice of the peace, when he is a postmaster under the authority of congress, and praying to have him removed from the office of justice, I have no reason to believe the court would sustain the motion. It would seem to be a sufficient answer for the court to say, his term of office, as justice of the peace, will expire before we can try the information, therefore the motion ought not to be granted. 2 Johns. R. 184. Or the court might say, if any person be injured by his acts as a justice of the peace, he may be sued as a trespasser, and on this ground refuse the motion. 2 Johns. R. 190. But, admitting that the injured party may have a remedy by filing an information, in the nature of a *quo warranto*, against this usurper of office, it does not follow that the injured party may not plead to the jurisdiction of this pretender and thereby prevent his trespassing any further. If the facts are sufficiently disclosed by the plea, the court can then judge whether he be a justice of the peace or not. These facts may be pleaded in abatement as well as the fact that he is related to one of the parties within the fourth degree of affinity or consanguinity.

The repeated animadversions of the council of censors and the practice of the legislature should have weight on this subject, with the court. In the last legislature there were several cases arising under this clause of the constitution, two of which are now in mind, the member from Moretown in the house of representatives, and senator Aikin, from Caledonia county, both of whom were deprived of their seats by reason of being postmasters; not that they had acted as such after being sworn and taking their seats in the legislature, but that they were so at the time of their election—on the ground that the election itself was a nullity. It may be further remarked that the respective houses did not feel themselves trammeled by any rules, nor by an express statute law, which would govern them in an ordinary con-

CALEDONIA,
*March*,
1842.

McGregor
*v.*
Balch *et al.*

tested election, that the person whose seat is contested should have notice to be present at the taking of testimony a given period before the session.

As to the pleading to the jurisdiction, it is believed that this course is fully sustained by the following authorities.— 1 Saunders' Pl. & Ev. 1, and the authorities there cited. *Richardson* v. *Denison,* 1 Aik. R. 210. *The People* v. *Judges of Madison,* 7 Cowen, 423–4. *Waters, qui tam,* v. *Day,* 10 Vt. R. 487. *State* v. *Bachelder;* 6 Vt. R. 479. *Putney* v. *Bellows,* 8 Vt. R. 272. *Gilman* v. *Thompson,* 11 Vt. R. 647–8. *Atkins* v. *Brown,* 3 Cowen, 206. *Latham* v. *Edgerton,* 9 Cowen, 227. *Borden* v. *Fitch,* 15 Johns. R. 141. *Mills* v. *Martin,* 19 Johns. R. 33.

The opinion of the court was delivered by

WILLIAMS, Ch. J.—The question is whether this suit should be dismissed on account of the alleged constitutional ineligibility of the justice to exercise a judicial office.

The constitution declares " that no person, holding any ' office of profit or trust under the authority of congress, ' shall be eligible to any appointment in the legislature, *or of* ' *holding* any executive or judiciary office under this state."

In the first place, we have no doubt that the office of postmaster is an office both of profit and trust, under the authority of congress. The office itself is created by act of congress, and all the regulations in relation thereto, are made and established under the same authority. So that the question is so far divested of the doubt which has been sometimes entertained, whether other offices under the general government, for which no act or proceedings of congress were made or required, are or are not within the spirit or letter of the prohibition created by the constitution.

Neither can there be any doubt that a justice of the peace is a ' judiciary officer.' Most of his powers and duties are of a judicial nature and concern the administration of justice.

From these considerations it would result that any one was incapable of *holding* both these offices at the same time. There is, however, a marked distinction in the terms made use of, in relation to appointments *in* the legislature, and *to* executive or judicial offices. In the one case such person

is declared to be ineligible to any *appointment in the legis-*
*lature.* Hence, if appointed to the legislature, while holding
an office under the authority of congress, the appointment
has uniformly been vacated. But the change of the phrase-
ology, 'or of *holding* any executive or judiciary office,'
necessarily creates this obvious difference ;—that such person
may be eligible, or may be elected, to an executive or
judicial office, but, in such case, if he accept the office under
the authority of the state, he must abandon the one held
under the authority of congress, and if he continues to hold
the latter, he cannot, consistently with the provisions of the
constitution, hold the former. The practical construction of
this clause of the constitution has been to this effect.
Whenever a person, holding such office under the authority
of congress, has been elected to the legislature, his election
has been declared void whenever the subject has been
brought to their notice. On the contrary, both the people
and the legislature have elected persons holding such offices,
both to executive and judicial offices, repeatedly, considering
them as eligible to such appointment, though incapable of
holding and exercising both at the same time.

On this part of the case, we are all of opinion that Mor-
rill could not, consistently with the requirements of the con-
stitution, hold and exercise the offices of postmaster and jus-
tice of the peace at the same time. And although he might
be eligible to the latter office, yet he must abandon the for-
mer, and could not hold them both.

It will follow, from this, that, either on a *quo warranto*,
or in any suit to which Morrill was a party, where he attempt-
ed to act, or to justify his acts, by virtue of and under his
commission as a justice of the peace, it might be replied that
he was incapable of holding that office, and, as to him, he
would be treated as having no authority whatever to act, or
justify his acts, as such justice, while he held the office of
postmaster under the authority of congress.

But a more important question still remains to be con-
sidered in this case, that is, whether, in this suit, between
other persons, and to which he is not a party, his acts and
authority can be called in question and decided.

The distinction between an officer, *de jure*, and *de facto*,
is well known and well established, and the consequences

CALEDONIA,
March,
1842.

McGregor
v.
Balch et al.

naturally arising from the distinction are equally well settled. An officer, *de jure*, is clothed with all the power and authority appertaining to the office, and neither his doings nor his acts, within the limits of his authority, can be questioned *any where*. The acts of an officer, *de facto*, are, as it respects third persons, valid; as it respects himself, invalid. An officer, *de facto*, is one who comes in by the forms of an election, but, in consequence of some informality, or want of qualification, is incapable of holding the office. Until, therefore, the appointment is vacated, his acts must be considered as valid. This subject was fully considered in the cases of *The People* v. *Collins*, 7 Johns. 549, *M'Instry* v. *Fanner*, 9 Johns. 135, *Fowler* v. *Beebe*, 9 Mass. 231, *Commonwealth* v. *Fowler*, 10 Mass. 291, and *Bucknam* v. *Ruggles*, 15 Mass. 180. In the cases from the 9th and 10th of Massachusetts Reports, above cited, certain officers were appointed and commissioned for a county before the county had any legal existence; and it would seem, if any thing would render such appointment wholly void and conveying no authority, those were cases demanding a decision to that effect, yet the appointments were considered as making them officers, *de facto*, and their acts good as it respects third persons. The principle of these cases governed the case of *Adams* v. *Jackson*, 2 Aik. 145. Yet, in the case of *Colburn* v. *Ellis et al.* 5 Mass. 427, an officer who was not sworn, could not justify in an action brought against him, and, in the case of *Commonwealth* v. *Fowler*, the office of the defendant was vacated on a *quo warranto*. Postmasters, and persons holding other offices under the authority of congress, have been elected as members of the legislature, and have taken their seats and voted, as such, until their seats were vacated; yet, no one would presume to say that an appointment made by the votes of such members, or a law passed by them, even though it should appear that their votes made the majority in the appointments, or passing the law, should be inquired into, or declared void, on that account.

It is said that these defendants have presented the question as soon as their rights were invaded by the acts of this justice. This is true if they have the right which they contend for. But if Morrill was a justice, duly appointed, and acted as such, the plaintiff might well bring this suit before him,

not knowing of his holding an office incompatible with the office of justice, which he exercised, and there would be no more propriety in saying the suit should fail on that account, because the defendant in this suit brought his appointment in question, than in saying the reverse.   There was nothing particularly affecting the interest of this defendant in being sued before this justice, nor should he be permitted to inquire whether Morrill rightfully held the office, in any suit to which the justice was not a party.

CALEDONIA, March, 1842.

McGregor v. Balch et al.

If this suit should be abated or dismissed on account of the objections raised against the justice, it will follow, as a necessary result, and one which cannot be avoided, that every act of a judicial officer similarly situated is void.   The taking confessions of debt, acknowledgments of deeds, or solemnizing matrimony, or any and every act of that nature, are invalid and void, unless they are recognized as the acts of an officer de facto.

The conclusion, therefore, to which we arrive is this; that Morrill was eligible to the appointment of a justice of the peace, notwithstanding he was a postmaster, but that he could not hold both offices at the same time, and if he had resigned his office of postmaster, when he qualified and assumed to act as justice, he would have been a justice of the peace de jure, that if he held the office of postmaster while he acted as justice, he could not have justified under the latter appointment in a suit brought against him directly, rhat, on a quo warranto, he would have been removed from the latter office.

But, in a suit to which he was not a party, between third persons, he is to be considered as an officer de facto, and his eligibility cannot be tried in such suit ; and, as a result of the whole, we think the plea to the jurisdiction cannot be sustained.

The judgment of the county court is, therefore, reversed, and judgment entered that the defendant's plea is insufficient, and that he answer over.