Merrimack,
No. 4534.

MARTIN A. CROWLEY d/b/a MARTIN A. CROWLEY TRUCKING

*v.*

NEW HAMPSHIRE FIRE INSURANCE COMPANY & *a.*

Argued February 5, 1957.

Decided March 26, 1957.

*Donald W. Cushing, Sulloway, Hollis, Godfrey & Soden* and *Robert P. Bass, Jr.* (*Mr. Bass* orally), for the plaintiff.

*Sheehan, Phinney, Bass, Green & Bergevin* and *Frederick W. Branch* (*Mr. Branch* orally), for the defendant insurance company.

Hudson Door Company furnished no brief.

BLANDIN, J. The main question before us is whether the record supports the Court's conclusion that the loss sustained was not insured. To determine this it is necessary to examine the facts. The only evidence which bore directly on how the accident happened came from the plaintiff's truck driver, although the plaintiff himself testified as to certain precautions taken before the trip began. The driver testified that the machine in question was "about four feet long, two feet wide, and about four feet high." It weighed approximately one ton and was located on the trailer "just over the spare tire . . . running fore and aft — the lengthway." The trailer was packed with other merchandise weighing from twelve to fifteen tons "as tight as possible," being tied down with "chains and binders." The chains were placed over the top of the machine and pulled "tight" by means of a binder which is "a piece of machinery with two hooks on it that you can pull to make it tight." On three sides of the machine other articles were packed closely, leaving only the outer or right side exposed. On this side, the machine was secured against falling off the trailer not only by the chain and binder but by two six-by-six pieces of wood called skids placed on top of each other so as to reach a height of twelve inches, running along the right side of the machine, and beyond these skids by stakes eighteen inches apart and from a foot and a half to two feet high. On the trip of some sixty to seventy miles from Hudson, Massachusetts, to Manchester, New Hampshire, the driver testified he traveled from forty to forty-five miles an hour up and down hills, and around a "lot" of curves without the slightest difficulty. He stopped two or three times to inspect his load and found everything all right.

In describing the accident under questioning by plaintiff's counsel the witness said he had stopped at the intersection of Granite and Canal Streets. Then traveling very slowly, "five or ten miles an hour" in low gear, he turned into Canal Street. It was, as he described it, a wide intersection and he had ample room to negotiate it. He had complete control of his truck at all times

but as he was turning into Canal Street he felt "the trailer swayed" and "I noticed in the mirror that the machine was falling off . . . I saw the machine when it was in the air, already on the way off." It went "right over the top" of the stakes. Later, in his direct examination in response to further questions by plaintiff's counsel, he said the swaying was "more or less" violent, "like rocking from side to side." At this time both the truck and the trailer were "all in" Canal Street. He stopped the truck and found the machine lying on its right side "right close" to the back wheel of the trailer which had not passed it. The chain which had secured it was broken but the stakes were intact.

The driver found no cause that day to account for any swaying of his truck or trailer and the road then appeared "level." Some three weeks later he testified he again visited the scene and noticed a "slight . . . dipping down" extending across the street, but he had "no idea" what caused the truck to sway.

It appears the question before the Court was whether a machine weighing about a ton, tightly packed and securely fastened, was thrown up from the floor of the trailer over skids a foot high and "right over the top" of stakes at least eighteen inches in height, while the driver was making a wide turn in low gear, traveling very slowly over a practically level road. We believe it common knowledge that in the circumstances disclosed here, heavy, inanimate bodies do not behave in this fashion. See *Smith* v. *Hooper*, 89 N. H. 36, 39. The driver's testimony postulated a physical impossibility and did not require belief. *Brown* v. *Mailhot*, 89 N. H. 240, 241; *Romano* v. *Company*, 95 N. H. 404, 407.

In order for the plaintiff to recover it was not enough for him merely to show that the machine in some manner fell to the ground and was damaged. He agrees he had also to satisfy the Court by a balance of probabilities that the loss was one covered by the policy (*Trepanier* v. *Company*, 88 N. H. 118, 121; 46 C. J. S. 398, 399) or in other words, that it was caused by at least a partial overturning or upsetting of the trailer sufficient to spill the machine onto the road. *Jack* v. *Standard Marine Ins. Co.*, 33 Wash. (2d) 265; see notes, 8 A. L. R. (2d) 1433; 36 A. L. R. (2d) 506, 527. The plaintiff has failed to sustain his burden of proof. The conclusion reached renders unnecessary consideration of the remaining exceptions and the order is

*Judgment for the defendants.*

WHEELER, J., took no part in the decision; the others concurred.