**Susan K. Baker v. John Hazen**

[341 A.2d 707]

No. 61-75

Present: **Barney, C.J., Smith, Keyser, Daley and Larrow, JJ.**

Opinion Filed June 20, 1975

*Mahady & Hudson,* White River Junction, for Plaintiff.

*Garfield H. Miller, Esq.,* of *Black & Plante,* White River Junction, for Defendant.

*John S. Burgess, Esq.,* Brattleboro, submitted brief of *amici curiae,* Town of Hartford and Vermont League of Cities and Towns.

**Barney, C.J.** The defendant is a long-time selectman of the town of Hartford, reelected at the last town elections. For about a year he has been the postmaster for the village of West Hartford. The plaintiff, a registered voter and taxpayer of the town, brought this suit to require the defendant to give up his position as postmaster on the ground that the defendant is occupying incompatible offices under chapter II, section 50 of the Vermont Constitution.

Section 50 provides:

> No person in this State shall be capable of holding or exercising more than one of the following offices at the same time: Governor, Lieutenant-Governor, Justice of the Supreme Court, Treasurer of the State, member of the Senate, member of the House of Representatives, Surveyor-General, or Sheriff. Nor shall any person holding any office of profit or trust under the authority of Congress, other than a member of the commissioned or enlisted personnel in the reserve components of the armed forces of the United States while not on extended active duty, be eligible to any appointment in the Legislature, or to any executive or judiciary office under this State.

Chapter II, section 17 of the Vermont Constitution, with respect to the oath to be taken by State senators and representatives, states:

> The words "office of profit or trust under the authority of Congress" shall be construed to mean any office created directly or indirectly by Congress, and for which emolument is provided from the Treasury of the United States, other than that of a member of the commissioned or enlisted personnel in the reserve components of the armed forces of the United States while not on extended active duty.

The portion of each section relating to service in the reserve components of the various branches of the armed services was adopted as an amendment to the Constitution in 1954.

The case of *State* v. *Edwards*, 99 Vt. 1, 130 A.2d 276 (1925), dealt with the same issue. In the town of Walden an incumbent school director was defeated for reelection. The successful candidate was the local postmistress. She took the prescribed oath, supplied the required bond, and undertook to serve as school director. Apparently her disqualification was realized, and she resigned. The selectmen then appointed a successor other than the defeated incumbent. This Court held that, since the postmistress could not qualify for the school director office, she could not resign. Therefore, the attempted appointment by the selectmen was invalid, and the defeated candidate still held the office since no successor had been elected and qualified.

In reaching that result, the Court clearly held that the federal office was incompatible, under the Vermont Constitution, with the office of school director. It goes without saying that the prohibition must, therefore, also extend to the office of selectman. The lower court so found in this case. *McGregor* v. *Balch*, 14 Vt. 428 (1842) stands for the same proposition.

It was advanced below and urged here that the position of postmaster no longer falls under the "federal office" proscription due to changes in the law. The Postal Reorganization Act of 1971 had as its purpose the conversion of the postal organization into a semi-autonomous operation independent of Congress operating under the executive branch. 39 U.S.C.A. § 201; *Lawhorn* v. *Lawhorn*, 351 F.Supp. 1399, 1400 (S.D.W.Va. 1972). 5 U.S.C.A. § 2104(b) states that an officer of the United States Postal Service is deemed not an officer for the purposes of that title but neither is a member of Congress. *Liberation News Service* v. *Eastland*, 426 F.2d 1379, 1382 (2d Cir. 1970). Appointments to the position of postmaster are now made by the Postal Service itself, rather than, as formerly, by the President with the advice and consent of the Senate. 39 U.S.C.A. § 1001. The 1971 Act no longer carries the position of postmaster as a statutory office.

The funding has also changed. Rather than drawing directly on the general funds of the Treasury, the Postal Service operates on a revolving fund, maintained in the Treasury, consisting of the postal revenues, plus some supplementary appropri-

ations from Congress, amounting to some ten per cent of its total funding. There is some suggestion that current deficits may enlarge that contribution. From this it is argued that the postmaster is not one for which "emolument is provided from the Treasury of the United States."

The issue thus becomes the question of whether or not these statutory alterations in the structure of the Postal Service and its relationship to Congress take the office of postmaster out from under our Constitution's proscription of incompatible office holding. The defendant argues most eloquently that it does, and points out that the question now posed is one that the Court, in *McGregor* v. *Balch, supra,* did not have to answer.

The trial court, examining the applicable provision of the United States Code, and reviewing the policy underlying the Vermont Constitution, found that the United States Postal Service was created "directly or indirectly under the authority of Congress." It went on to determine that, indirectly, the emolument paid to postal employees is provided from the Treasury of the United States. From all this, the court concluded that the 1971 Act, from the point of view of the Vermont constitutional provisions, represented a change of form, but not of sufficient substance to overturn *State* v. *Edwards, supra.*

To paraphrase the language in *Liberation News Service* v. *Eastland, supra,* 426 F.2d at 1383, we do not find that any of this gives substantial aid in resolving the question before us. Even though the legislation makes the Postal Service "an independent executive agency", it is still "created" by congressional enactment under the exclusive authority of that body to establish post offices. U.S. Const., art. I, section 8, clause 7. Furthermore, under 39 U.S.C.A. § 208, Congress has reserved the entire power to alter, amend, or repeal any or all of the Postal Service law.

Similarly, the combination of the Postal Service Fund, the revolving fund in the Treasury, and the supplementing appropriations from Congress, leave uncertain whether the pay of a postmaster consists of an emolument provided from the Treasury of the United States. Typically, these conflicting inferences are resolved by reference to constitutional objectives.

*Hartness* v. *Black*, 95 Vt. 190, 198, 114 A. 44 (1921).

Unfortunately, the very age of the provision makes it obscure. If the purpose was to prevent divided loyalty because of emoluments received from both state and federal sources, in these days of expanded funding many, if not most, of our citizens could be found to be so benefited, either directly or indirectly. If the same consideration is limited to those in the positions of office holders in the federal government, is the proscription inapplicable because it is under the executive branch, and is that affected by the fact that the enactment came from Congress? Or has the clause become limitation on federal patronage in the period since 1793?

. A look at the history of the provision through the various State Constitutions does give a little inkling of the purpose, though not entirely satisfactory for the purposes of this litigation. In the Constitutions of 1777 and 1786 the prohibition against holding "any office in the gift of Congress" applied to those elected to represent this State in that body. See chapter II, section 10 of the Constitution of 1777 and chapter II, section 27 of the Constitution of 1786. In the Constitution of 1793, in chapter II, section 26, it assumed its present dimensions, save only the armed forces amendment of 1954 previously referred to.

With an uncertainty in the measure of the mischief sought to be prevented, and a strong dilution of the proscribed status of the old office of postmaster, the question takes on a different aspect. The constitutional provision represents a denial of a right to a citizen. If it cannot be clearly demonstrated that he falls within its proscription, or equally plainly shown that he is in violation of its purpose, he is entitled to be held free of its prohibition. Therefore, we hold that the Vermont Constitution does not, by chapter II, section 50, make the office of postmaster as presently established under Chapter 39 of the United States Code Annotated a position incompatible with that of selectman.

*Judgment reversed.*